Nidia BARCIA, et al., Plaintiffs,

v.

Louis SITKIN, et al., Defendants.

MUNICIPAL LABOR COMMITTEE,
et al., Plaintiffs,

v.

Louis SITKIN, et al., Defendants,

and

Dennis C. Vacco, as Attorney General
of the State of New York, and the
State of New York, Respondents.

Nos. 79 Civ. 5831 (RLC),
79 Civ. 5899 (RLC).

United States District Court,
S.D. New York.

Aug. 21, 1996.

Raff & Becker, New York City (David Raff, Robert L. Becker, of counsel), for Plaintiffs.

Dennis C. Vacco, Attorney General of State of New York, New York City (Thomas R. Sofield, of counsel), for Defendants.

### *OPINION*

ROBERT L. CARTER, District Judge.

A consent judgment and decree ("Consent Judgment") was approved by the court on July 29, 1983, in settlement of consolidated class action lawsuits concerning the practices and procedures of the New York State Unemployment Insurance Appeal Board ("Appeal Board"). Presently before the court is plaintiffs' motion for contempt, enforcement, and modification of the Consent Judgment.

### I.

This protracted litigation consists of several consolidated class action suits challenging the practices and procedures of the Appeal Board, a body established by the state of New York to determine eligibility for unemployment benefits. Plaintiffs, claimants who have been or will be subjected to adverse determinations by the Appeal Board, asserted violations of the Social Security Act, 42 U.S.C. § 503(a); the equal protection and due process clauses of the Fourteenth Amendment; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; and the Federal Unemployment Tax Act, 26 U.S.C. § 3304(a)(6)(A)(i). The history of this case has been extensively detailed in opinions reported at 1995 WL 527696, Unempl.Ins.Rep.

at 22,139 (S.D.N.Y. Sept. 7, 1995) (Carter, J.); 865 F.Supp. 1015 (S.D.N.Y.1994) (Carter, J.); 683 F.Supp. 353 (S.D.N.Y.1988) (Carter, J.); 1983 WL 44294, Unempl.Ins.Rep. at 21,712 (S.D.N.Y. Aug. 1, 1983) (Carter, J.); 89 F.R.D. 382 (S.D.N.Y.1981) (Carter, J.); and in unpublished opinions dated May 9, 1996, and September 14, 1983. Familiarity with these opinions is assumed.

In 1983, the parties entered into the Consent Judgment in settlement of this litigation; it was approved by the court on July 29, 1983. In 1992 and 1993, plaintiffs filed a series of contempt motions, alleging numerous violations of the Consent Judgment. The court granted the motions on many of the grounds put forth by plaintiffs. *See Barcia v. Sitkin,* 865 F.Supp. 1015 (S.D.N.Y. 1994) ("the 1994 Order"). The court stated that

> [d]efendants have consistently ignored their obligations under the Consent Decree, and, in so doing, have sought to nullify the Decree unilaterally. Nevertheless, although such actions justify their imposition, sanctions will not be ordered "unless defendants persist in refusing to accept and adhere to their binding obligations to implement in good faith what was agreed to." *Hurley* [*v. Coughlin* ], 158 F.R.D. 22, 30–31 [ (S.D.N.Y.1993) ].... This opinion has clarified defendants' obligations and indicated what actions must cease, and so good faith compliance with the Consent Decree may be forthcoming. If violations continue, however, sanctions will be imposed.

*Id.* at 1034.

Plaintiffs now claim that defendants have failed to fulfill their obligations under the Consent Judgment and the 1994 Order. They move for sanctions, contempt, enforcement, modification, and a wide range of other relief.

## II.

The court has the power to ensure compliance with its orders, including consent decrees. *Berger v. Heckler,* 771 F.2d 1556, 1569 (2d Cir.1985). Furthermore, "[a] defendant who has obtained the benefit of a consent decree—not the least of which is the termination of the litigation—cannot be permitted to ignore such affirmative obligations as were imposed by the decree." *Id.* at 1568. Thus, the court may issue orders to ensure that the decree is properly observed.

However, consent decrees are not merely court orders; they have "a dual character, a 'hybrid nature' that reflects attributes of both a contract and a judicial decree." *Kozlowski v. Coughlin,* 871 F.2d 241, 245 (2d Cir.1989) (quoting *Local Number 93, Int'l Assoc. of Firefighters v. Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 3073–74, 92 L.Ed.2d 405 (1986)). Because the decree is an agreement negotiated by the parties, in which each side makes concessions in order to gain advantages, the court must look to the decree itself, and not to the goals of the parties in negotiating it, in order to interpret its provisions. *United States v. Armour & Co.,* 402 U.S. 673, 681, 682, 91 S.Ct. 1752, 1757, 1758, 29 L.Ed.2d 256 (1971) ("the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it"). Thus, "[t]he court is not entitled to expand or contract the agreement of the parties as set forth in the consent decree." *Berger,* 771 F.2d at 1568. In *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), the United States Supreme Court held that a significant change in circumstances, either in the facts or in the law, is a prerequisite for the modification of a consent decree.

## III.

The present motion goes unopposed, apparently through oversight on the part of defendants and not because of agreement with plaintiffs' allegations. *See* letter from Assistant Attorney General Thomas R. Sofield, April 18, 1996; letter from David Raff, April 23, 1996. Accordingly, the court has the power to grant the motion by default. Under Local Rule 3(b), the failure to file a legal memorandum along with opposition papers to a motion "may be deemed sufficient cause for the ... granting of the motion by default." Rule 3(b) gives "notice to the world that the Court [can] grant [a] motion

for failure to respond." *Klein v. Williams,* 144 F.R.D. 16, 18 (E.D.N.Y.1992). The Rule has even more force when no opposition papers of any kind are filed.

In light of the lengthy history of this bitterly contested litigation, however, the court is reluctant to grant in full the sweeping relief requested by plaintiffs in the absence of any response to their allegations. While defendants' failure to respond to the present motion perhaps constitutes an instance of the dilatoriness of which plaintiffs complain, the court will not exact a drastic price for their lapse, since the dereliction could well be the result of apparently wholesale staff turnover in the Attorney General's office.

The 1994 Order finding defendants in contempt was comprehensive and explicit. It laid out specific obligations defendants had incurred by their entry into the Consent Judgment in settlement of this litigation. Those of plaintiffs' requests that are firmly grounded in the Consent Judgment and the 1994 Order and are based on reliable factual assertions are granted, as discussed below. Other requests, clearly outside the court's power or inconsistent with the guarantees of the Consent Judgment, are denied. Finally, certain of the matters plaintiff has brought to light on the present motion are too serious to be disposed of on the current record. Therefore, in accordance with the following discussion of each of plaintiffs' charges, the motion is granted in part, denied in part, and held in partial abeyance pending a conference and possible further briefing and factual submissions by the parties.

### (a) *Use of unqualified interpreters*

Plaintiffs point out that a notice of hearing used in connection with the remand of class member cases to be reopened directs the *claimant* to obtain services of an interpreter. (*See* Notice of Hearing, attached to letter from Robert L. Becker to Roy A. Esnard, July 14, 1995, Ex. 3 to Decl. of Robert L. Becker, Aug. 10, 1995.) Furthermore, three affiants describe instances in which translators incapable of simultaneous translation were used, hearings were adjourned due to lack of translators, or volunteer translators were used.

Plaintiffs argue that these instances constitute violations of the Consent Judgment and 1994 Order. They cite Consent J. ¶¶ 23–25 (Appeal Board to provide interpreter services when necessary) and the 1994 Order, 865 F.Supp. at 1031 ("translation must be simultaneous," every word of relevant conversations among the ALJ, the parties, and counsel must be translated, and defendants may not use volunteer translators) and n. 21 ("any use of Notices not clearly articulating defendant's obligations with regards to the provisions of translation is prohibited").

■ Plaintiffs' motion for an order enjoining the use of volunteers of any skill level, or of staff members not capable of verbatim, simultaneous translation, is reasonable and in keeping with the Consent Judgment; it is hereby granted. Plaintiffs' request for an order compelling defendants to reschedule remand hearings for recipients of the improper notice who might have been prejudiced is also granted. Each recipient of a notice improperly requiring him or her to supply his or her own interpreter at a remand hearing must be notified of the error; remand hearings must be rescheduled for these claimants.[1]

The court will not at this time grant plaintiffs' request for an order of contempt and sanctions for repeated noncompliance. However, the court is concerned by the evidence submitted by plaintiffs that as of July 12, 1995, defendants were directing claimants to supply their own interpreters, in blatant violation of the 1994 Order. Any further proof of noncompliance with these provisions of the Consent Judgment will be dealt with more severely.

Plaintiffs report that defendants plan to contract out the interpretation job. Plaintiffs have requested that the court order defendants to allow them to review the selection process before it is implemented as well as the information from the proposed successful bidder. This request goes beyond the scope of plaintiffs' entitlements under paragraph 53 of the Consent Judgment: the

---

1. This order applies only to notices dated following the filing of the 1994 Order.

selection of interpreters is not a new procedure under the decree. This part of the motion is denied. The court stresses that defendants are required to select interpreters who will provide competent, simultaneous, verbatim translations of an equivalent quality to that provided in the Southern District of New York. 1994 Order, 865 F.Supp. at 1031.

### (b) *Bi-annual Spanish-language needs assessment survey*

■ Plaintiffs allege that defendants have not provided them with requested information on qualifications and proficiency of the Appeal Board's Spanish-speaking staff. Plaintiffs assert that under Consent Judgment ¶¶ 28, 30, 31–33 (defendants are required to employ adequate numbers of Spanish-speaking staff at local offices) and Consent Judgment ¶ 53 (defendants must notify plaintiffs of any changes in procedures in the Consent Judgment 30 days prior to their implementation and give plaintiffs an opportunity to object and go to mediation or seek court intervention), they merit an order compelling defendants to inform plaintiffs of how competency of Spanish speaking staff is tested, including copies of tests, instructions, scoring information, and any studies done on the tests.

The court declines to order that plaintiffs be given the information they request. Plaintiffs are not entitled to oversee defendants' employee selection process; they are entitled to register complaints if that process results in violations of the Consent Judgment. Any complaints as to the quality of language skills of Spanish-speaking staff should be made through appropriate channels with reference to specific incidents and allegations.

### (c) *Class member benefits*

The court's 1994 Order required defendants to set up a procedure for prompt payment of benefits to class members. *See* 1994 Order, 865 F.Supp. at 1024 (defendants must establish "a procedure for assuring the prompt payment of benefits to all class members so entitled"). Plaintiffs claim that defendants did so, but failed to provide it to

plaintiffs ahead of time, in accordance with Consent Judgment ¶ 53 ("[w]here sections or paragraphs of this consent judgment ... mandate new procedures or standards to be designed ... the defendants shall ... inform plaintiffs' counsel of the proposed ... new procedures.... at least thirty (30) days prior to their implementation"). Indeed, they assert that defendants failed to provide them with a copy of the plan at any time. They assert that the plan is inadequate: many claimants will be denied benefits to which they are entitled, due in part to the fact that defendants failed to use IRS forwarding services to locate class members and send them the Reopening Notice, a method which has been required in past court orders in this case. It is not clear whether plaintiffs contest the adequacy of the plan on any other grounds.

Plaintiffs request an order of contempt; an order requiring defendants to develop an adequate plan, to be supplied to plaintiffs prior to implementation; an order requiring defendants to give plaintiffs a report "which fully reconciles all class member decisions granting benefits and the payment status related to that case, i.e., whether claimant was paid, and, if not, why payment was not made," (Decl. of Robert L. Becker, Aug. 10, 1995, at 14); and an order requiring defendants to use IRS forwarding services to mail out notices within 60 days of the court's opinion on this motion.

Defendants' plan should have been submitted to plaintiffs prior to implementation, pursuant to Consent Judgment ¶ 53. If defendants have already proceeded with the implementation of their plan, in violation of the Consent Judgment, plaintiffs must be afforded the opportunity to contest its adequacy. This matter will be taken up at a conference with the court on September 25, 1996, at 11:30 a.m. Both parties are to submit to the court prior to that date a *brief* statement of (a) the present status of defendants' plan of implementation, and (b) the adequacy of that plan in providing prompt payments to class members.

### (d) *Requests for reopening*

According to plaintiffs, defendants have failed to respond to 81 written requests for

reopening; five of these date from 1984 to 1991, and 76 from 1992 to 1994. Plaintiffs further assert that defendants have rejected reopening requests in 17 cases since 1994; plaintiffs have requested mediation, but in most of those cases, defendants have failed to supply the relevant case files that plaintiffs need to prepare their arguments for mediation. They request an order compelling defendants to respond to reopening requests and to provide plaintiffs' counsel with relevant case files for cases in which mediation has been requested.

The 1994 Order is clear on defendants' duty to respond to requests for reopening: "there is no reason why defendants should not respond to plaintiffs' requests for reopening of cases within 60 days." 1994 Order, 865 F.Supp. at 1027. Defendants are hereby ordered to comply with this provision.

■ As to plaintiffs' right to see complete case files, paragraphs 42 and 43 of the Consent Judgment provide that plaintiffs' counsel may inspect complete files of any case on reasonable notice to the Appeal Board. Plaintiffs cannot be expected to prepare for mediation on the strength of the checklists alone; they are entitled to inspect the entire file. Defendants are ordered to comply with paragraphs 42–43 of the Consent Judgment.

Finally, defendants must respond to plaintiffs' requests for mediation within a reasonable time if paragraph 54 of the Consent Judgment is to have any meaning at all. They are ordered to do so.

(e) *Disparity in 1994 E checklist count*

Plaintiffs assert that defendants have failed to provide plaintiffs' counsel with all E checklists prepared by the Appeal Board in 1994. According to plaintiffs, an affidavit by Timothy J. Coughlin, Executive Director of the Appeal Board, dated March 21, 1995, submitted in *Dunn v. New York State Dep't of Labor,* states that the Appeal Board prepared approximately 4,500 E checklists every six months. However, plaintiffs received only 6,464 in all of 1994.

■ Paragraph 41 of the Consent Judgment unambiguously allows plaintiffs' counsel access to defendants' master file of *all* E

Checklists once each month. The court therefore grants plaintiffs' requested relief and hereby orders defendants to make all 1994 E checklists available to plaintiffs' counsel and to provide an explanation for the apparent disparity in numbers between Coughlin's affidavit and the number of E Checklists plaintiffs have seen from 1994.

(f) *Modification of the CSD manual*

The Community Services Division ("CSD") III Manual ("Manual") is a compilation of the procedures of the Unemployment Insurance Division. Plaintiffs, supplied with the CSD Manual as a "new procedure" in accordance with paragraph 53 of the Consent Judgment, found "deficiencies" and informed defendants of them. For example, plaintiffs assert that the Manual does not comply with the requirement that local offices must send claimants an employer objection within five days of its receipt by the office. *See* Consent J. ¶ 4 (claimants shall be sent an employer's objection, if any, within five business days of its receipt by the local office). Plaintiffs allege that defendants have not responded to plaintiffs' correspondence and have failed to provided them with documents referred to in the Manual that are necessary for plaintiffs' monitoring tasks.

Plaintiffs also state that in accordance with the court's instructions given at a December 5, 1994 conference, they informed defendants of certain local office procedures coming within the ambit of paragraph 9 of the Consent Judgment. Under that provision, the Appeal Board shall not sustain a decision denying benefits when the unfavorable decision stems from a failure to follow the procedures of the Unemployment Insurance Division. Plaintiffs assert that defendants have not responded.

Plaintiffs seek a finding of contempt regarding defendants' violation of paragraph 4 of the Consent Judgment and an order requiring immediate compliance. They further seek an order requiring defendants to promptly provide documents requested, to instruct Administrative Law Judges ("ALJs") and Appeal Board members on additional procedures required, to revise

procedures inconsistent with the Consent Judgment, and to inform all Unemployment Insurance Division staff of the corrections.

██ The court orders defendants to comply forthwith with paragraph 4 of the Consent Judgment. Defendants are further ordered to respond to plaintiffs' complaints concerning the CSD Manual and alleged deficiencies in local office procedures. The parties are to proceed with any differences in their positions on the Manual and the local office procedures as directed by the Consent Judgment dispute resolution mechanisms. The court declines to find defendants in contempt at this time; as before, however, defendants are on notice that future failures to respect the procedures outlined in the 1994 Order and the Consent Judgment will be addressed with more severity.

### (g) *Continued violations of Paragraph 53*

The 1994 Order found that defendants occasionally closed cases rather than adjourning them when claimants had shown good cause for an adjournment. 865 F.Supp. at 1025. The court held that this policy violated the notification and consultation provisions of Consent Judgment ¶ 53 and ordered defendants to comply. *Id.* Plaintiffs now assert that defendants persist in their practice of issuing default decision against claimants who have requested an adjournment, and have not provided them with a statement of this policy in compliance with paragraph 53 and the 1994 Order. They point to Exhibits 13 and 14 to their motion as examples of default judgments issued in cases in which an adjournment was requested and appropriate. Plaintiffs also assert that defendants have deleted important portions of the Claimant Handbook without providing notice to plaintiffs as required by paragraph 53 of the Consent Judgment.

Defendants are ordered to submit a concise statement to the court prior to September 25, 1996, indicating (a) whether they have complied with paragraph 53 and the 1994 Order concerning their adjournment policy and if so, in what manner; (b) an explanation for the default judgments issued in Exhibits 13 and 14 to plaintiffs' present motion; (c) whether they have deleted portions of the Claimant Handbook and if so, which portions; and (d) whether they notified plaintiffs of the deletions and if not, why not. The court reserves judgment on this part of plaintiffs' motion until this information is received.

### (h) *Representative sample of Appeal Board case files for monitoring*

██ According to plaintiffs, the Appeal Board processes backlogged cases in Albany and current cases in Brooklyn. Of the cases sent to plaintiffs for review, they report that 75% are from Brooklyn, although those cases comprise only 45% of the total of appeal cases to be decided in 1995. They request an order requiring that files selected for review be chosen on a random basis from current and backlog cases in proportion to the total in each category.

Plaintiffs offer no grounds for their request and the court can discern no foundation in the Consent Judgment for such a demand. This portion of the motion is denied.

### (i) *Computerized monitoring and tracking system*

In 1992, plaintiffs sought an order requiring defendants to establish a computer-based monitoring system. The court rejected their request, stating that

[b]y necessity, the Consent Decree represented a compromise, an expression of mutual assent given the relative bargaining strengths of the two sides, and not a wishlist for all that one or the other side would like. *See [U.S. v.] Armour & Co.*, 402 U.S. [673] at 681, 91 S.Ct. [1752] at 1757 [29 L.Ed.2d 256 (1971)]. Plaintiffs negotiated for and obtained an internal monitoring system that provided for the opportunity to review up to 600 case files per year, and they have failed to persuade the court that the system in place is so deficient or that circumstances have changed such that modification of the Consent Decree is warranted.

1994 Order, 865 F.Supp. at 1020–21 (citation omitted). Plaintiffs now renew their request, arguing that circumstances have changed significantly since that time: the Consent

Judgment violation rate has increased dramatically, from 28.53% in 1991–92 to 43.97% in 1994 to 51.19% in the first half of 1995.[2] Plaintiffs contend that computerization of the E checklists would allow the Appeal Board to identify the substantive areas in which and the ALJs for whom errors are concentrated, so that training can be targeted.

Plaintiffs seek an order modifying the Consent Judgment to (a) establish a maximum violation rate for ALJs; (b) direct defendants to implement a computer-based monitoring system; and (c) require defendants to provide plaintiffs' counsel, on a monthly basis, with reports derived from the data entered into the computer-based monitoring system. Alternatively, plaintiffs seek an order that defendants provide them with a statistically significant sample per ALJ per year of case files and checklists (including the names of the hearing ALJ and the appeal ALJ), to enable effective monitoring.

■ Although the court agrees that the rate of Consent Judgment violations is indeed disturbing, particularly since violations seems to be on the rise, these numbers alone do not at this point warrant a modification or enlargement of the monitoring system established through negotiations and bargained-for concessions by the parties. The primary benefit of the computerized monitoring system—and of the alternative proposal as well—appears to be the ability to monitor the performance of individual ALJs. The court is not presently persuaded that the Consent Judgment requires such scrutiny. The matter will be taken up at the September 25, 1996 conference; both parties should be prepared to discuss the reasons for the high rate of violations and possible means for ameliorating the situation consistent with the Consent Judgment.

### (j) *Violation of Consent Judgment ¶ 50*

Plaintiffs' counsel reports that five new ALJs told him during their training that they had not been given the court's 1994 Order

and were not aware of its terms. Pursuant to Consent Judgment ¶ 50, all ALJs must be given copies of court orders. While the court will not make a finding of contempt at this time, plaintiffs' motion for an order compelling immediate compliance with ¶ 50 is granted.

### (k) *Special Master*

The court rejected plaintiffs' previous request for a Special Master. 1994 Order, 865 F.Supp. at 1034. Plaintiffs argue that defendants' uncooperativeness, inaction, and unresponsiveness now warrant such a measure. Plaintiffs contend that defendants have been consistently unwilling to discuss or address plaintiffs' concerns; a Special Master would save the court from being constantly called in to address them. For example, plaintiffs have made 17 demands for mediation as a result of defendants' denial of requests for reopening; mediation has historically not solved disputes in this case, and absent a Special Master, these matters will have to be brought before the court.

Plaintiffs' motion for an order modifying the Consent Judgment to appoint a Special Master is denied as too drastic a solution at the present time. The court will proceed on the assumption that defendants will respond promptly to the concerns outlined in this opinion and will in the future fully comply with their clearly defined responsibilities. Should this assumption prove unwarranted, the court will reconsider more comprehensive relief.

### *Conclusion*

Plaintiffs' motion is granted in part, denied in part, and held in partial abeyance pending a conference to be held on September 25, 1996, at 11:30 and possible further briefing and factual submissions by the parties. The Attorney General's office, counsel for defendants, is instructed to certify by September

---

**2.** As a further basis for its change-in-circumstances argument, plaintiffs contend that defendants have in the past agreed to institute a computerized system in the companion case of *Dunn v. New York State Dep't of Labor*, No. 73 Civ.

1656, although they have failed to follow through. This factor does not constitute changed circumstances sufficient to warrant a modification of the Consent Judgment.

25, 1996, that they have complied with each the court's orders contained herein.

IT IS SO ORDERED.